1839

The STATE, Respondent v. Morris Winfred CASH, Appellant.

(419 S.E. (2d) 811)

Court of Appeals

*Asst. Appellate Defender Robert M. Pachak,* of *S.C. Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *Amie L. Clifford,* Columbia, and *Sol. Holman C. Gossett, Jr.,* Spartanburg, *for respondent.*

Heard May 11, 1992; Decided June 22, 1992.

Order on Reh. July 30, 1992.

GOOLSBY, Judge:

Morris Winfred Cash represented himself during a trial for first-degree criminal sexual conduct, a trial that resulted in his conviction for third-degree criminal sexual conduct. Cash appealed and the Supreme Court remanded the case for the trial court to determine whether Cash knowingly and intelli-

gently waived his right to counsel. *State v. Cash*, 304 S.C. 223, 403 S.E. (2d) 632 (1991). On remand, the trial court determined Cash knowingly and intelligently waived the right. Cash appeals. We affirm.

At a pre-trial hearing, Cash asserted his right of self-representation. The judge informed Cash of his right to counsel but did not inform him of the dangers and disadvantages of self-representation.[1]

Immediately before trial, the trial judge asked Cash if he wanted to represent himself. The trial judge did not, however, ask Cash if he understood the dangers and disadvantages of self-representation.[2]

To establish a valid waiver of the right to counsel, the accused must be made aware of the right to counsel and of the dangers and disadvantages of self-representation. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed. (2d) 562 (1975); *Bridwell v. State*, — S.C. —, 413 S.E. (2d) 30 (1992).

Although a specific inquiry by the judge expressly addressing the disadvantages of a *pro se* defense if preferred, the ultimate test is not the trial judge's advice but the accused's understanding. *Wroten v. State*, 301 S.C. 293, 391 S.E. (2d) 575 (1990). In the absence of an inquiry by the judge, courts look to the record to determine if the accused had sufficient background to understand the disadvantages of self-representation. *Bridwell*, — S.C. at —, 413 S.E. (2d) at 31.

---

[1] The following colloquy occurred:

The Court: Have you employed an attorney?
Mr. Cash: I have not. I have not.
The Court: You do not want one?
Mr. Cash: No, sir.

\* \* \* \* \* \*

The Court: And you want to waive your right to a lawyer? If you cannot afford one, the court would appoint the public defender; you do not want the public defender?
Mr. Cash: No, sir.
The Court: And you want to represent yourself?
Mr. Cash: Yes, sir.

[2] The judge asked, "Mr. Cash, I have been told that you want to proceed without a lawyer. Is that correct?" Cash answered, "It is."

Factors the courts have considered in determining if an accused had sufficient background to understand the disadvantages of self-representation include: (1) the accused's age, educational background, and physical and mental health; (2) whether the accused was previously involved in criminal trials; (3) whether he knew of the nature of the charge and of the possible penalties; (4) whether he was represented by counsel before trial or whether an attorney indicated to him the difficulty of self-representation in his particular case; (5) whether he was attempting to delay or manipulate the proceedings; (6) whether the court appointed stand-by counsel; (7) whether the accused knew he would be required to comply with the rules of procedure at trial; (8) whether he knew of legal challenges he could raise in defense to the charges against him; (9) whether the exchange between the accused and the court consisted merely of *pro forma* answers to *pro forma* questions; and (10) whether the accused's waiver resulted from either coercion or mistreatment. *Fitzpatrick v. Wainwright,* 800 F. (2d) 1057, 1065-1067 (11th Cir. 1986); *see also Strozier v. Newsome,* 926 F. (2d) 1100 (11th Cir. 1991) (restating the factors noted in *Fitzpatrick*), *cert. denied,* — U.S. —, 112 S.Ct. 350, 116 L.Ed. (2d) 289 (1991).

Our application of these factors to the instant case convinces us Cash had sufficient background to understand the disadvantages of self-representation.

### 1.

At the time of trial, Cash was forty-six years old and had spent thirty-four years in prison. He had completed the equivalent of six years of college. Although Cash claims he was not in a good frame of mind when he declined assistance of counsel because he had spent months in a noisy, harshly lit jail cell where he could only sleep two or three hours a night, there is no evidence he was either physically or mentally impaired. *Cf. Prince v. State,* 301 S.C. 422, S.E. (2d) 462 (1990) (an accused who exhibited little understanding of criminal proceedings, relied on the solicitor's advice, was mentally disturbed at the time he waived counsel, and underwent at least three years of psychiatric treatment was not sufficiently aware of the dangers of self-representation).

## 2.

Cash had been previously involved with criminal proceedings. His experience with the criminal justice system began when he was a juvenile. Moreover, less that three months before his trial on criminal sexual conduct, Cash appeared *pro se* at a hearing on a petition for a writ of *habeas corpus*.

## 3.

Cash understood the nature of the charge against him and the possible penalty. He acknowledged at the *habeas corpus* hearing that the warrant was read to him and that he knew what he was charged with. As explained more fully below, Cash's discovery request and the questions he asked on cross-examination at trial indicate he understood the nature of the charge of first-degree criminal sexual conduct. Further, Cash does not contend he did not understand the nature of the charge.

Both the assistant solicitor who prosecuted the case and the pre-trial hearing judge told Cash the offense of first-degree criminal sexual conduct carries a possible thirty years in prison. During his testimony at the remand hearing Cash noted he was "facing 30 years."

## 4.

Although there is no indication either that Cash was represented by counsel before trial or that an attorney advised him of the difficulty of self-representation, the record shows Cash appreciated the difficulty of his particular case. Indeed, it is because of his appreciation of the difficulty of his case that he declined the assistance of counsel and decided to represent himself. His testimony at the remand hearing demonstrates he believed he could do a better job of preparing his defense than the public defender could.[3]

---

[3] Cash remarked at the remand hearing,

[The public defender's] caseload is so great I just didn't feel that he had the time to devote to a case like mine. . . . I don't think that that's the kind of attorney, an attorney with that caseload, that I would want representing me. . . .

Maybe I made the wrong decision. I just thought that maybe *I* should do it because I did know the circumstances of the case. [Emphasis ours.]

### 5.

There is no indication Cash was attempting to delay or manipulate the proceedings in declining the assistance of counsel.

### 6.

The trial judge appointed a stand-by attorney for Cash. The attorney sat at the defense table with Cash during trial and suggested that Cash make certain motions and ask particular questions.

### 7.

The record indicates Cash knew he would have to comply with procedural rules. At his preliminary hearing, Cash attempted to submit a petition for a writ of *habeas corpus,* but the presiding judge told Cash he could not accept the petition at that time. This experience put him on notice that he would have to follow the court's rules and that he would be at a disadvantage for not knowing the rules. *Cf. Fitzpatrick,* 800 F. (2d) at 1066-1067 (in determining the accused was sufficiently aware he was required to comply with court rules, the court considered the accused's experience in representing himself at a pre-trial hearing).

### 8.

The record also indicates Cash was aware prior to trial of possible legal challenges he could raise in defense to the charge against him, including the defense that no sexual battery occurred in fact.[4] In his discovery request, Cash asked for the sexual assault report prepared by the hospital. At trial, he cross-examined the emergency room physician who treated the victim about possible inconsistencies in the report and he asked the physician about the nature of the victim's alleged injuries, the time-frame in which the alleged injuries could have occurred, and whether they could have been self-inflicted.

---

[4] A sexual battery is required for one to be guilty of either first-degree criminal sexual conduct, for which Cash was indicted, or for the lesser included offense of third-degree criminal sexual conduct, for which he was found guilty. S.C. Code Ann. §§ 16-3-652(1) and 16-3-654(1) (1976).

### 9.

At the pre-trial hearing in which Cash declined the assistance of counsel, the exchange between the judge and Cash did not consist merely of *pro forma* answers to *pro forma* questions. The judge explained that a lawyer would be appointed for Cash if he could not afford one. He inquired about Cash's age and educational background, about the teachers he had in prison, and about the amount of time he had spent in prison. He stressed that Cash could be sentenced to thirty years for first-degree criminal sexual conduct. The judge also asked Cash, "Why don't you want a lawyer?" Cash then explained that he felt the public defender did not "have any time to devote to a case like this."

### 10.

Finally, there is no indication whatever that Cash declined the assistance of counsel as a result of either coercion or mistreatment.

The trial court, therefore, did not err in determining Cash knowingly and intelligently waived the right to counsel.

Affirmed.

CURETON, J., and LITTLEJOHN, Acting J., concur.

## ORDER ON PETITION
## FOR REHEARING

### July 30, 1992

GOOLSBY, Judge:

Morris Winfred Cash seeks a rehearing, asserting that we either overlooked or misapprehended certain points in our opinion affirming the trial court's determination that he knowingly and intelligently waived his right to counsel. He attacks our consideration of the several factors courts have considered in determining the issue of waiver of counsel. He complains the factors are ones used in *habeas corpus* proceedings where "the burden of proof is on the petitioner to show that the waiver did not meet constitutional standards." Cash makes no express claim that these factors are not to be considered in cases involving a direct appeal of the issue, though

the suggestion is there that he feels they should not be.

First, nothing in our opinion can fairly be viewed as indicating that we thought Cash had the burden of proof on the issue of waiver of the right to counsel. We are aware that, to establish waiver of the right to counsel, it is incumbent upon the state to prove an intentional relinquishment or abandonment of the right. *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed. (2d) 424 (1977).

Second, the factors we discussed are factors that are relevant to any discussion concerned with the issue of waiver of counsel, irrespective of whether the issue arises on direct appeal or on collateral review. *See, e.g., Commonwealth v. Nero*, 14 Mass. App. Ct. 714, 442 N.E. (2d) 430 (1982) (a case involving a direct appeal wherein the court held there existed a sufficient basis for concluding a defendant made a knowing and intelligent choice to represent himself at trial where the defendant on the day of trial jettisoned the court-appointed counsel who had represented him up until then and elected to proceed *pro se* with appointed counsel standing by); *Commonwealth v. Flowers*, 5 Mass. App. Ct. 557, 365 N.E. (2d) 839 (1977) (a case involving a direct appeal by an armed robbery defendant wherein the court held the record showed the defendant, who fired his lawyer when the trial was about to begin, knew the problems confronting him in representing himself, had been warned of the pitfalls of proceeding without counsel, and, because he recently had been tried and sentenced for armed robbery, knew of the nature of and consequences of the charges against him), *cert. denied*, 434 U.S. 1077, 98 S.Ct. 1269, 55 L.Ed. (2d) 783 (1978); W. LaFave & J. Israel, Criminal Procedure § 11.3, at 490-91 (Student Ed. 1985) ("Consideration must be given to all of the surrounding circumstances, including not only the statements of the trial judge and defendant, but also the defendant's age, mental condition, and prior experience with the criminal process, previous hearings in the case, the the general nature of the offense charged.").

Accordingly, the petition for rehearing is

Denied.

CURETON, J., and LITTLEJOHN, Acting J., concur.