**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0450n.06

Case No. 19-5746

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Aug 03, 2020<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| OSCAR GUEVARA SALAMANCA, | ) | |
| | ) | |
| Defendant-Appellant. | ) | **O P I N I O N** |

BEFORE: GIBBONS, McKEAGUE, and STRANCH, Circuit Judges.

McKEAGUE, J., delivered the opinion of the court in which GIBBONS, J., joined. STRANCH, J. (pp. 7–15), delivered a separate dissenting opinion.

**McKEAGUE, Circuit Judge.** District courts calculate advisory sentencing ranges under the United States Sentencing Guidelines by comparing a defendant's "base offense level" to his "criminal history category." A defendant's prior conviction will sometimes enhance both of those variables, resulting in a higher sentencing range. That is what happened in Oscar Guevara Salamanca's case. His sentence for an immigration offense, 8 U.S.C. § 1326(a) and (b)(2), might have been in the range of 70 to 87 months' imprisonment but for an old conviction and suspended sentence of probation in South Carolina for grand larceny. With that conviction added to the mix, his range jumped to 130 to 162 months' imprisonment.

Guidelines calculations can get complicated. Suffice it to say that Salamanca's South Carolina conviction counted because, within the relevant window of time for sentence-calculation purposes, a South Carolina court revoked his probation for pleading guilty to burglary in Virginia. Without the revocation, the lower sentencing range of 70 to 87 months' imprisonment would have applied.

Salamanca argued for a sentence lower than 130 months' imprisonment, pointing to among other things the age of his South Carolina conviction and probation revocation. The district court addressed Salamanca's arguments but, in the end, was not swayed; it imposed a 130-month sentence. Salamanca had no further objections at sentencing.

But now, Salamanca attacks the validity of his probation revocation. He argues the South Carolina court unconstitutionally revoked his probation in his absence and without the assistance of counsel. And because the revocation was unconstitutional, it should not have been included in his guidelines calculation. Thus, Salamanca says, the district court should have sentenced him using the lower range of 70 to 87 months' imprisonment.

Despite his invocation of the Constitution, we review Salamanca's claim for plain error because he presents it for the first time on appeal. *United States v. Barton*, 455 F.3d 649, 652 (6th Cir. 2006). To succeed, Salamanca must identify a district court "(1) error (2) that was obvious or clear, (3) that affected [his] substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Crawford*, 943 F.3d 297, 308 (6th Cir. 2019) (quotation omitted). "[O]nly in exceptional circumstances" will these four factors be met. *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (alteration in original) (quotation omitted).

We discern no obvious or clear error here. The government does not contest that Salamanca's probation was revoked in his absence. That was no doubt a violation of his right to due process under the Constitution; when revocation is discretionary, as it is in South Carolina, probationers are entitled to an opportunity to be heard. *See Black v. Romano*, 471 U.S. 606, 611 (1985); *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972); *Sneed v. Donahue*, 993 F.2d 1239, 1243–44 (6th Cir. 1993). But a violation of a probationer's due-process rights, while unacceptable, is not something federal courts can remedy at sentencing for another offense. A state criminal judgment that has not been set aside, like the revocation at issue here, is "presumptively valid and may be used to enhance [a] federal sentence." *Daniels v. United States*, 532 U.S. 374, 382 (2001). It may be collaterally attacked at federal sentencing only if the state procured that judgment in violation of the defendant's right to counsel under *Gideon v. Wainwright*, 372 U.S. 335 (1963). *See Custis v. United States*, 511 U.S. 485, 496–97 (1994). "No other constitutional challenge to a prior conviction may be raised in the sentencing forum." *Daniels*, 532 U.S. at 382; *see Lackawanna Cty. Dist. Att'y v. Coss*, 532 U.S. 394, 403–05 (2001); *Custis*, 511 U.S. at 496–97.

Salamanca thus emphasizes that he was deprived of counsel when the South Carolina court revoked his probation *in absentia*. The problem with this argument is that probationers generally do not have a constitutional right to counsel. *Penn. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 365 n.5 (1998). The right to counsel that probationers may claim in special circumstances stems from *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), rather than *Gideon*. We recognize there is some tension in our court's unpublished decisions as to whether *Custis* might tolerate collateral review of denial-of-counsel claims not premised on *Gideon* at sentencing. *Compare United States v. McAllister*, 491 F. App'x 569, 578 (6th Cir. 2012) (concluding *Custis* does not permit *Scarpelli* claims at sentencing), *with United States v. Robertson*, 40 F. App'x 933, 940 (6th Cir. 2002)

(permitting a collateral attack at sentencing based on *In re Gault*, 387 U.S. 1 (1967), which established a right to counsel in juvenile delinquency proceedings). We need not resolve this tension, however, because even if *Custis* permits a defendant to raise a collateral attack based on *Scarpelli* at sentencing, Salamanca has not shown he was unconstitutionally deprived of counsel— much less plainly so.

*Scarpelli* requires a probationer asserting a right to counsel to colorably claim either that (1) he did not violate his probation or (2) revocation is unwarranted due to "substantial reasons" justifying or mitigating the violation and that those reasons "are complex or otherwise difficult to develop or present." *Scarpelli*, 411 U.S. at 790. Neither before the district court nor on appeal has Salamanca explained how he might have met this standard. For one, Salamanca admitted to violating his probation by pleading guilty to burglary in Virginia. And for two, Salamanca merely asserts that "he could have advocated for substantially less time" at a revocation hearing. That is not enough to suggest he had a colorable, complicated argument for which counsel was needed. *See, e.g.*, *United States v. Eskridge*, 445 F.3d 930, 932–33 (7th Cir. 2006); *Warner v. Parke*, 96 F.3d 1450 (7th Cir. 1996) (unpublished). Indeed, an "admission to having committed another serious crime creates the very sort of situation in which counsel need not ordinarily be provided" to a probationer facing revocation. *Scarpelli*, 411 U.S. at 791. Salamanca alleges nothing outside the ordinary regarding his probation violation. And given this lack of evidence and argument both before us and below, we fail to see how any district court error was "obvious or clear." *Crawford*, 943 F.3d at 308.

Salamanca also argues he was denied counsel in violation of state law. But we do not collaterally review state criminal judgments for compliance with state law unless noncompliance violates the Constitution. *See Wainwright v. Goode*, 464 U.S. 78, 86 (1983); *Gryger v. Burke*, 334

U.S. 728, 731 (1948). Because Salamanca does not sufficiently allege an unconstitutional denial of counsel under *Scarpelli*, we reject his collateral attack. *See United States v. Lalonde*, 509 F.3d 750, 767–68 (6th Cir. 2007).

Finally, Salamanca claims his sentence is unreasonable because the district court's use of an unconstitutional revocation to calculate his sentence amounted to unreasonable reliance on an "impermissible factor." This claim "boils down to the argument that" a defendant's sentence is unreasonable unless the district court, through collateral review, "independently confirms the validity of an existing state sentence" impacting the defendant's sentence. *United States v. Napolitan*, 830 F.3d 161, 167 (3d Cir. 2016). Our resolution of Salamanca's collateral attack thus disposes of his reasonableness challenge. Regardless, a factor that is "impermissible" for a district court to consider is generally one "that is neither enumerated in nor consistent with the Sentencing Guidelines or 18 U.S.C. § 3553(a)." *United States v. Cabrera*, 811 F.3d 801, 808 (6th Cir. 2016). The guidelines expect district courts to calculate sentencing ranges using prior convictions and sentences that are not invalid. U.S.S.G. § 4A1.1(a), Application Note 1. Salamanca's revocation has never been, and cannot now be, invalidated. The district court therefore did not rely on an impermissible factor in imposing a low-end guidelines sentence of 130 months' imprisonment.

Before concluding, a few words in response to the dissent. We do not think it useful to issue a point-by-point rebuttal of every claim the dissent musters from beyond Salamanca's briefing, many of which—like the claims that *Custis* was merely interpreting the Armed Career Criminal Act and that sentences do not carry finality interests—Salamanca's counsel had the good sense not to raise. *See Coss*, 532 U.S. at 404 (applying *Custis* in a case that had nothing to do with the Armed Career Criminal Act); *Montgomery v. Louisiana*, 136 S. Ct. 718, 732 (2016) (states have "weighty interests in ensuring the finality of convictions and sentences"). We will leave it at

this:  as far as we can tell, no court has read *Custis* to permit a defendant to challenge at federal sentencing anything more than the unconstitutional denial of counsel in a prior state proceeding, the outcome of which is being used to enhance his sentence.  And Salamanca did not sufficiently allege he was unconstitutionally denied counsel.

We deny as moot the motion to take judicial notice of state court records, and we affirm.

**JANE B. STRANCH, Circuit Judge, dissenting.** Guevara Salamanca's nearly 11-year sentence for illegal reentry is based on an improperly calculated Guidelines range. The majority opinion misapplies and misconstrues Supreme Court precedent to affirm the sentence, which was mistakenly enhanced by an unconstitutionally imposed prior South Carolina sentence. Because a wrongly calculated Guidelines range constitutes plain error and results in a procedurally unreasonable sentence, I respectfully dissent.

As the majority opinion concedes, South Carolina "no doubt" violated Guevara Salamanca's "right to due process under the Constitution" when it imposed a 5-year sentence at a hearing held without Guevara Salamanca or his attorney present. Although the majority appreciates that South Carolina subjected Guevara Salamanca to "unacceptable" due process violations, it concludes that the South Carolina sentence can properly be used to enhance his federal sentence under *Custis v. United States*, 511 U.S. 485 (1994).

*Custis*, however, does not apply to this case. The Government apparently agrees that *Custis* is not where our analysis should begin or end as it did not cite the case in its brief. That is because *Custis's* holding is limited to collateral attacks on convictions used as predicates to apply an Armed Career Criminal Act enhancement. In *Custis*, the Court "granted certiorari to determine whether a defendant in a federal sentencing proceeding may collaterally attack the validity of previous state *convictions* that are used to enhance his sentence under *the ACCA*." 511 U.S. at 487 (emphasis added). Based on interpretation of the ACCA's text, language not at issue here, the Court concluded that "Congress did not intend to permit collateral attacks [during sentencing] on prior convictions under § 924(e)." *Id.* at 493. As relevant in *Custis*, the ACCA "provides for enhancement of the sentence of a convicted firearms possessor who 'has three previous convictions . . . for a violent felony or a serious drug offense." *Id.* at 485 (quoting 18 U.S.C. § 924(e)).

In contrast, Guevara Salamanca's Guideline range was enhanced based on language in the Sentencing Guidelines (USSG):

> (2) . . . If, before the defendant was ordered deported or ordered removed from the United States for the first time, the defendant engaged in criminal conduct that, at any time, resulted in—
>
> (A) a conviction for a felony offense (other than an illegal reentry offense) *for which the sentence imposed was five years or more*, increase by 10 levels;

USSG 2L1.2 (emphasis added).

The majority opinion inappropriately maps *Custis's* interpretation of the ACCA onto this Guideline enhancement without any analysis of its textual differences. For the ACCA enhancement to apply, "the statute focuses on the *fact* of the conviction," *Custis*, 511 U.S. at 490–91 (emphasis in original), but the Guideline at issue here considers the length of a sentence imposed, USSG 2L1.2. This difference is meaningful because the *Custis* Court placed significant weight on finality interests, *Custis*, 511 U.S. at 497, which do not apply when a defendant challenges the constitutionality of a sentence, not a conviction. "[E]ven after a defendant has served the full measure of his sentence, a State retains a strong interest in preserving the convictions it has obtained [because] States impose a wide range of disabilities on those who have been convicted of crimes, even after their release." *Daniels v. United States*, 532 U.S. 374, 379 (2001). But no such finality interests exist when it comes to a constitutional challenge to a sentence. The routineness of resentencing proves this point. *See e.g.*, *Phillips v. White*, 851 F.3d 567, 571 (6th Cir. 2017) ("requiring the Commonwealth of Kentucky to resentence" a petitioner); *Cauthern v. Colson*, 736 F.3d 465, 489 (6th Cir. 2013) (ordering Tennessee to commence resentencing proceedings for a petitioner); *Bates v. Bell*, 402 F.3d 635, 650 (6th Cir. 2005) (same); *Powell v. Collins*, 332 F.3d 376, 402 (6th Cir. 2003); *DePew v. Anderson*, 311 F.3d 742, 754 (6th Cir. 2002); *Isaac v. Grider*, 211 F.3d 1269 (6th Cir. 2000).

Guevara Salamanca has already completed his unconstitutionally imposed sentence, and he does not challenge the underlying South Carolina *conviction*, only his constitutionally infirm *sentence*. To the extent that South Carolina has an interest in preserving the finality of Guevara Salamanca's conviction because it may "impose a wide range of disabilities on those who have been convicted of crimes," *see Daniels*, 532 U.S. 379–80, that interest is not threatened by allowing Guevara Salamanca to collaterally attack his sentence. In any event, and as described below, South Carolina has since conceded that its practice of holding a hearing in a defendant's absence and without waiver of the right to counsel violates the United States Constitution.

The majority opinion also fails to grapple with the distinctions between applying a statute enacted by Congress and applying a Guideline written by the U.S. Sentencing Commission. "The Sentencing Commission unquestionably is a peculiar institution within the framework of our Government." *Mistretta v. United States,* 488 U.S. 361, 384 (1989). And "the unique composition and responsibilities of the Sentencing Commission give rise to serious concerns about a disruption of the appropriate balance of governmental power among the coordinate Branches." *Id.* Such a separation of power concern is implicated by Guevara Salamanca's sentence because his South Carolina sentence increased his current sentence's statutory maximum from 120 months to 240 months; the district court ultimately sentenced him to 130 months, which is above the appropriate statutory maximum once the erroneous Guideline enhancement is removed.

Even assuming *Custis's* holding—which is based on statutory interpretation of an ACCA enhancement addressing predicate convictions—could be extended to a Guideline enhancement concerned with predicate sentences, the majority misapplies *Custis*. There are "rare cases in which no channel of review was actually available to a defendant with respect to a prior conviction, due to no fault of his own." *Daniels*, 532 U.S. at 383. When a defendant cannot "be faulted for failing

to obtain timely review of a constitutional claim," a collateral attack at sentencing may be appropriate. *Lackawanna Cty. Dist. Attorney v. Coss*, 532 U.S. 394, 405–06 (2001); *see also Daniels*, 532 U.S. at 383. This exception applies where a judgment is imposed without notice or an opportunity to be heard because such a judgment "'wants all the attributes of a judicial determination; it is judicial usurpation and oppression, and *never* can be upheld where justice is justly administered.'" *Powell v. State of Ala.*, 287 U.S. 45, 64 (1932) (emphasis added) (quoting *Galpin v. Page*, 85 U.S. 350, 369 (1873)). "It never has been doubted . . . that notice and hearing are preliminary steps essential to the passing of an enforceable judgment, and that they, together with a legally competent tribunal having jurisdiction of the case, constitute basic elements of the constitutional requirement of due process of law." *Id.* at 68.

Guevara Salamanca was not in custody for the South Carolina conviction at the time of his federal sentencing; he lacked the ability to attack his unconstitutional South Carolina sentence through state appeal or federal habeas petition. Nor can he be faulted for his inability to obtain review of his constitutional claims—claims the majority opinion agrees are "no doubt" meritorious—because he never received notice of the date, time, or location of his initial revocation hearing. South Carolina served Guevara Salamanca with a Probation Citation, but in the blank for the date and time of the revocation hearing, the Citation states "TBA." For the hearing's location, the Citation says only "Charleston." The form notified Guevara Salamanca that he had a right to an attorney. Yet, on May 15, 2003, while he was in custody in another state, South Carolina, without providing adequate notice, imposed its 5-year sentence in his absence and without counsel present. Given this procedure, Guevara Salamanca did not have the opportunity to pursue direct or collateral attacks on his South Carolina sentence. His current challenge to the sentence is appropriate.

At the time Guevara Salamanca received his South Carolina sentence, the South Carolina Supreme Court allowed the State to obtain criminal judgments in a defendant's absence and without appointed counsel present. *State v. Cain*, 284 S.E.2d 779, 779 (S.C. 1981). According to then-current South Carolina law, "a waiver of the right to counsel" could "be inferred from a defendant's actions," including a decision not to appear in court. *Id.* (citing *State v. Jacobs*, 245 S.E.2d 606 (S.C. 1978)). Here, however, Guevara Salamanca never received notice of the hearing's date, time, or specific location, so nothing could be inferred from his absence about a waiver of rights, even under then-current South Carolina law. And South Carolina has since recognized that a defendant may not waive his right to be heard through counsel based on conduct alone. *Osbey v. State*, 825 S.E.2d 48, 51 (S.C. 2019).

In any case, Guevara Salamanca's challenge is not a typical collateral attack because the merits of his constitutional claim are plain from the record before us. That the South Carolina sentence was "no doubt" unconstitutionally imposed—and doubly so, violating both Guevara Salamanca's underlying due process right to be heard (through the lack of notice and imposition of a sentence in absentia) and his secondary right to counsel—also means *Custis* does not resolve this case.

Objecting to the use of two prior state convictions as ACCA predicate convictions, Custis argued that he received ineffective assistance of counsel and that his guilty pleas were not knowing and intelligent. *Custis*, 511 U.S. at 487. Complete deprivation of Custis's constitutional rights was not at issue. Custis's constitutional challenges hinged on proving partial deprivations of his rights: he sought to show that had his attorney advised him of the defense of voluntary intoxication, "he would have gone to trial, rather than pleaded guilty"; he also sought to show that his attorney had not adequately advised him of his rights regarding stipulated facts. *Id.* at 488.

Whether Custis had experienced partial deprivations of his constitutional rights, moreover, was not obvious from the face of the record. To resolve Custis's attacks on his prior convictions, the sentencing court would have had to "rummage through" "difficult to obtain," possibly nonexistent, "state-court transcripts or records." *Id.* at 496. The Court feared that allowing Custis's collateral attacks would have deprived the state-court judgments of their "normal force and effect," harming the interest in promoting finality of judgments. *Id.* at 497. Custis "was still 'in custody'" for his state convictions when sentenced in federal court and "could have attacked his state sentences in Maryland or through federal habeas review." *Id.*

This reasoning is inapplicable here. First, the complete constitutional deprivation of Guevara Salamanca's due process rights is obvious on the face of the record. The PSR says South Carolina imposed the sentence in absentia; the Government does not dispute this fact; and South Carolina has since conceded that its practice of revoking parole in absentia violated the U.S. Constitution. There is no need "to rummage through . . . nonexistent or difficult to obtain state-court transcripts or records" to determine that the sentence was unconstitutionally imposed. *Id.* With respect to finality, as previously described, any finality interests in Guevara Salamanca's conviction are not threatened because he challenges only the use of his sentence as a predicate for the Guideline enhancement, not the constitutionality of his underlying conviction.

The majority opinion misconstrues the *Custis* exception in another way. It concludes that because Guevara Salamanca's right to be heard and right to counsel are based on the due process clause rather than the Sixth Amendment, petitioner is not entitled to attack the validity of the South Carolina sentence under *Custis*. Though *Custis* referenced the right "established in *Gideon*," 511 U.S. at 496, the majority's conclusion misreads *Custis* by ignoring that any right to counsel—*Gideon* or otherwise—is grounded in the due process right to be heard. The Court in *Custis*

acknowledged this principle, explaining that the right to counsel is unique "because of our oft-stated view that '[t]he right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel.'" *Id.* at 494–95 (quoting *Powell*, 287 U.S. at 68–69).

The majority opinion ignores the building blocks that led to "the right to have appointed counsel established in *Gideon*," *id.*, and imagines that the *Gideon* right is divorced from due process concerns. To the contrary, as *Gideon* made clear, the Sixth Amendment's constitutional mandate is incorporated through the Fourteenth Amendment's due process guarantee. 372 U.S. at 341–45; *see also id.* at 339. Tracing the right established in *Gideon*, the Supreme Court has long explained that the right to counsel is derived from fundamental due process rights. As the Supreme Court explained in *Powell*, if "a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense." 287 U.S. at 69; *id.* at 72 ("the right to have counsel appointed, when necessary, is a logical corollary from the constitutional right to be heard by counsel.").

Because the "right to counsel" is derived from "the right to be heard," *Custis*, 511 U.S. at 494–95, and Guevara Salamanca was entirely deprived of the right to be heard here, regardless of whether he was entitled to counsel, his case involves no extension of the right to collaterally attack a prior judgment used to enhance a sentence.

Even applying the illogical rule—whereby violations of the building-block "right to be heard" cannot be collaterally attacked but derivative violations of the "right to counsel" can be—the majority opinion still errs in its conclusion that Guevara Salamanca lacked a right to counsel. In "certain cases," "fundamental fairness—the touchstone of due process" requires "that the State

provide at its expense counsel for indigent probationers or parolees." *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973). "Presumptively," counsel should be provided when a party is informed of a right to counsel; when the party is incapable of representing himself; or when, even where a violation is uncontested, a probationer could present mitigating facts that are complex or otherwise difficult to develop or present. *Id.* Guevara Salamanca received notice of his right to counsel; he was incapable of representing himself at the revocation hearing because he was incarcerated in another State; and his mitigation strategy would have been difficult to develop and present because it involved understanding the collateral consequences of his immigration status, convictions, and sentences. Nothing in the record indicates that the South Carolina court was required to impose a 5-year sentence upon revocation. Had Guevara Salamanca been present with the assistance of counsel, he could have been sentenced to less time. This complicated mitigation issue is significant because, again, the validity of the length of the sentence, not the constitutionality of the underlying conviction, is at issue here.

Even if the majority opinion were correct that the unconstitutional South Carolina sentence could properly be used to enhance Guevara Salamanca's sentence here, the district court still plainly erred under the tenets of our procedural reasonableness review. The procedural reasonableness doctrine is the backstop that ensures sentences do not violate the basic due process requirements, and "[r]egardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 51 (2007). We must "ensure that the district court committed no significant procedural error such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence[.]"

*Id.* Here, even if the district court calculated Guevara Salamanca's Guideline range correctly (which it did not), the sentence it imposed was procedurally unreasonable because the court gave no consideration to the South Carolina due process violations, thus "failing to adequately explain the chosen sentence[.]" *Id.*. That the district court may have ultimately selected the same sentence after considering the relevant facts, does not make the current 130-month sentence procedurally proper.

For all of these reasons, I respectfully dissent.